**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JONATHAN DURAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-717-TCK-JFJ** |
| | ) | |
| **CPL. JASON B. MUSE, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED OPINION AND ORDER[1]

Before the Court are Defendants' Motion to Dismiss (Doc. 53); Defendants' Motion for Summary Judgment (Doc. 64); and Plaintiff's Motion for Summary Judgment (Doc. 61).[2]

### I.    Defendants' Motion to Dismiss

#### A.    Background and Factual Allegations[3]

On the evening of April 18, 2015, officers of the Tulsa Police Department ("TPD"), led by Corporal Jason B. Muse ("Muse"), went to Plaintiff's home in the course of child welfare investigation by the Oklahoma Department of Human Services ("DHS").  The investigation was based on allegations of sexual abuse and other abuse and neglect of "J.D.," a six-year-old girl

---

[1] This Amended Opinion and Order corrects an error on Page 3 of the original Opinion and Order (Doc. 107).  As discussed in Part II.E, Plaintiff's third cause of action is a § 1983 claim of false imprisonment under the Fourth Amendment, and his fourth cause of action is a § 1983 claim of malicious prosecution under the Fourteenth Amendment.  However, in the original Opinion and Order the terms "false imprisonment" and "malicious prosecution" were transposed.  Except as noted, this Amended Opinion and Order is identical in content to the Court's original Opinion and Order.

[2] Also pending are Plaintiff's Motion for Sanctions (Doc. 98); Plaintiff's Motion to Reconsider (Doc. 99); Plaintiff's Motion for Leave to Appear (Doc. 100); Defendants' Motion in Limine (Doc. 102); and Plaintiff's Motion to Transfer (Doc. 106).

[3] In order to clarify the context of this lawsuit, this section includes limited undisputed facts that are not alleged in the TAC.

residing in the home. Plaintiff alleges that the investigation was based on a false tip from an unreliable witness. Within thirty minutes of arriving at Plaintiff's home, Muse broke down the door and entered the home. (Third Am. Compl. ("TAC"), Doc. 28, ¶ 1.) Before forcing entry, Muse yelled, "Open this door or we are going to splatter you all over the floor," (*id.* ¶ 3), but he did not inform Plaintiff of a warrant (*id.* ¶¶ 1, 2). Upon entering the home, Muse asked, "What is the name of this girl that I am here to get?" (*Id.* ¶ 3.) Muse then removed J.D. from the home "forcefully (at gunpoint)." (*Id.* ¶ 3.) Plaintiff was arrested on charges of obstructing an officer based on his alleged refusal to permit officers to enter the home.

The TAC alleges that the entry into Plaintiff's home and seizure of J.D. were done without "any kind of court order authorizing such action." (TAC, ¶ C(1).) In his response brief (Doc. 56), Plaintiff concedes that Muse was informed of a verbal court order before the forced entry. However, Plaintiff alleges the verbal order was not a valid warrant to enter his home.

**B.    Claims Alleged**

Plaintiff is a pro se litigant participating in this proceeding *in forma pauperis*; accordingly, the Court construes his allegations liberally. The TAC is written on a standard complaint form provided by the Court. Under "Jurisdiction," the TAC alleges the following: "Civil Rights Violations, Constitutional Law violations, Malicious prosecution, False imprisonment, Child kidnapping, Home invasion, Burglary, [and] Death Threats." (TAC, ¶ B.) The TAC names Muse in his official and individual capacity as well as the City of Tulsa (the "City"). However, the TAC does not clearly set forth which causes of action Plaintiff asserts against which defendant or defendants. Based on allegations in the TAC and Plaintiff's arguments in his response brief, the Court construes Plaintiff's causes of action as follows:[4]

---

[4] The Court is unable to construe civil causes of action based on the TAC's assertions of "Child kidnapping, Home invasion, Burglary, [and] Death Threats." It is unclear whether Plaintiff

1.  Fourth Amendment violation under 42 U.S.C. § 1983 ("§ 1983") based on unreasonable search and seizure, arising from the forced entry into Plaintiff's home to seize J.D.;[5]

2.  Fourth Amendment violation under § 1983 based on false arrest, arising from Plaintiff's arrest for obstructing an officer;

3.  Fourth Amendment violation under § 1983 based on false imprisonment, arising from Plaintiff's arrest for obstructing an officer; and

4.  Fourteenth Amendment violation under § 1983 alleging malicious prosecution based on Plaintiff's arrest and detainment.

For the purpose of Defendants' motion to dismiss, the Court assumes Plaintiff alleges each claim against the City and against Muse in both his individual and official capacities. Plaintiff alleges damages of "$1,600,000 dollars . . . for mental suffering and anxiety as well as other damages[,] . . . punitive damages against Cpl. Muse in his Individual Capacity[,] and 3,000 dollars in structural damage to my home." (TAC, ¶ E.)

Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss the claims set forth in Paragraph B(1) of the TAC. Defendants also contend Muse is entitled to qualified immunity and Plaintiff's official capacity claim against Muse should be dismissed.

---

intended to assert any tort claims, and Plaintiff has made no indication that any claims are presented in compliance with the Oklahoma Government Tort Claims Act. Accordingly, the Court cannot construe any tort claims Plaintiff may have intended to allege against any particular defendant or defendants, without speculating or assuming an improper role. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (noting that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant.").

[5] Although Plaintiff also suggests J.D. was deprived of her rights and wrongfully taken into DHS custody, no claim is asserted on J.D.'s behalf in the TAC.

**C.     Rule 12(b)(6) Standard**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

In the specific context of § 1983 actions in which officers are sued personally and have asserted the defense of qualified immunity at the Rule 12(b)(6) stage, the Tenth Circuit has stated:

> To nudge their claims across the line from conceivable to plausible, in this context, plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the

> defendants notice of the theory under which their claim is made. This does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.

*Id.* at 1249 (10th Cir. 2008) (internal quotation marks and citations omitted).

"[W]hen the plaintiff is proceeding pro se, we must construe [his] pleadings liberally," applying a less stringent standard than is applicable to pleadings filed by lawyers. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994), cert. denied, 513 U.S. 1183 (1995)). However, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Id.* (citing *Hall*, 935 F.2d at 1110).

### D.    Documents Outside the Pleadings

Defendants contend the Court should consider certain Tulsa County District Court records and police reports relating to the seizure of J.D. and to Plaintiff's arrest on April 18, 2015. The Court may consider certain categories of materials without converting a motion to dismiss under Rule 12(b)(6) to one under Federal Rule of Civil Procedure 56 ("Rule 56"). The Court may take notice of documents that are incorporated by reference in the complaint, or referred to in the complaint in support of Plaintiff's claims, as long as the parties do not dispute their authenticity. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (quoting *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (holding that "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute"). The Court may also consider matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The court records include an Order to Take Minor Child(ren) into Emergency Custody dated April 20, 2015 (the "4/20/15 Order") (Doc. 53-1), along with supporting application materials submitted to the court, including the unsworn declaration of Burke ("Burke Declaration") (Docs. 53-2-3) and an Emergency Custody Hearing Order dated April 21, 2015 ("4/21/15 Order") (Doc. 53-4). Plaintiff alleges that each of these documents is forged and contains untruthful statements. Plaintiff also alleges that no valid court order existed at the time of the forced entry to his house. Plaintiff states that when he asked for a copy of the written emergency custody order, he was told by a juvenile court clerk that there was no written order, and that he did not obtain a copy of the 4/20/15 Order until it was submitted by Defendants in this lawsuit. For the purpose of Defendants' motion to dismiss, the Court may take judicial notice of the existence of the 4/20/15 Order, without taking its contents as true. *See U.S. v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012) (holding that court dockets are "generally public documents" of which courts may take judicial notice). However, the remaining DHS and police reports will not be considered at this stage. First, the police reports Defendants attach to their motion are not referenced in the TAC. Second, Plaintiff appears to dispute the authenticity and/or veracity of at least some of the records. Accordingly, they may not be considered without converting the motion to one under Rule 56, and the Court will not consider them in analyzing Defendants' motion to dismiss.

E.    **Analysis[6]**

1.    **§ 1983 Claims of Unreasonable Search and Seizure**

Plaintiff alleges the forced entry of his home was in violation of his constitutional rights. Plaintiff appears to argue two alternative bases for this claim: (1) the seizure of J.D. from Plaintiff's

---

[6]  Because the Court must construe a pro se plaintiff's complaint liberally, for the purpose of this analysis the Court will consider allegations Plaintiff has set forth in his response brief in addition to those stated in the TAC.

home was not made pursuant to a valid warrant, and (2) even if authorized, the forced entry was unreasonable because officers failed to knock and announce their presence.

### a.      Absence of Valid Warrant

Defendants contend the forced entry of Plaintiff's home was lawful because it was done pursuant to a verbal order of Tulsa County Juvenile District Judge Doris Fransein ("Judge Fransein") and the further order of Tulsa County Assistant District Attorney Kyle Felty ("Felty"). Defendants rely on Oklahoma Stat. tit. 10A § 1-4-201-A.2 ("§ 1-4-201-A.2"), which provides:

> [A] child may be taken into custody prior to the filing of a petition . . . [b]y an order of the district court issued upon the application of the office of the district attorney. The application presented by the district attorney may be supported by a sworn affidavit which may be based upon information and belief. The application shall state facts sufficient to demonstrate to the court that a continuation of the child in the home or with the caretaker of the child is contrary to the child's welfare and there is reasonable suspicion that:
>
> a. the child is in need of immediate protection due to an imminent safety threat,
>
> b. the circumstances or surroundings of the child are such that continuation in the child's home or in the care or custody of the parent, legal guardian, or custodian would present an imminent safety threat to the child, or
>
> c. the child, including a child with a disability, is unable to communicate effectively about abuse, neglect or other safety threat or is in a vulnerable position due to the inability to communicate effectively and the child is in need of immediate protection due to an imminent safety threat.
>
> The application and order may be verbal and upon being advised by the district attorney or the court of the verbal order, law enforcement shall act on such order. If verbal, the district attorney shall submit a written application and proposed order to the district court within one (1) judicial day from the issuance of the verbal order. Upon approval, the application and order shall be filed with the court clerk[.]

Plaintiff alleges that Muse searched his home and seized J.D. without a warrant and without exigent circumstances, in violation of Plaintiff's Fourth Amendment rights. *See United States v. Martinez*, 643 F.3d 1292, 1295-96 (10th Cir. 2011) ("[W]arrants are generally required to search a

person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."). Plaintiff contends the verbal order of Judge Fransein did not satisfy the requirements of a warrant under the Fourth Amendment of the United States Constitution because it does not state that it is a warrant or authorize the use of force. Plaintiff further alleges that Muse did not know the name of the child he was there to pick up and contends the verbal order did not describe the place to be searched or person to be seized with particularity.

While Defendants argue that the search and seizure was authorized by a court order pursuant to § 1-4-201.A.2, Plaintiff alleges that statutory requirements were not followed. Specifically, Plaintiff alleges that the order did not sufficiently identify J.D. and was not properly communicated to Muse before the forced entry of Plaintiff's house. Plaintiff further alleges that a written copy of the verbal order was not timely filed in compliance with the statute. For the purpose of Defendants' motion to dismiss, the Court must accept Plaintiff's allegations as true and grant all inferences in favor of Plaintiff. Therefore, the Court rejects Defendants' statutory defense at this stage. The Court finds Plaintiff has stated a claim against Muse under 42 U.S.C. § 1983 for an alleged violation of Plaintiff's Fourth Amendment rights in connection with the search and seizure of Plaintiff's house. Accordingly, Defendants' motion to dismiss is denied with respect to this claim against Muse.

### b. Knock-and-Announce Violation

Plaintiff also contends that the forced entry into his house was unreasonable because TPD officers failed to announce their presence. "The 'Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.'" *U.S. v. Masa*, 401 F.3d 1208, 1212 (10th

Cir. 2005) (citing *Richards v. Wisconsin*, 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)). Defendants contend Plaintiff ignored repeated requests to come to the door and speak with officers, although officers could see Plaintiff through the drapes, and that officers warned Plaintiff that forced entry would occur if he did not speak to officers. However, the TAC alleges that Muse did not inform Plaintiff of a warrant and only gave a threatening command to open the door. (TAC, Doc. 28, ¶ 2.) At the Rule 12(b)(6) stage, the Court must accept Plaintiff's allegations as true and grant all reasonable inferences in Plaintiff's favor. Accordingly, the Court finds that Plaintiff has stated a Fourth Amendment claim against Muse based on the alleged failure of officers to knock and announce their presence before forcing entry.

### c.    Municipal Liability

A municipality or other local government may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may only be held liable for its own illegal acts and may not be held vicariously liable for its employees' actions. *Id.* To assert a § 1983 claim against the City, Plaintiff must plausibly allege that (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014).

Plaintiff contends TPD is liable due to its policy, practice, or custom of using force when acting pursuant to a verbal court order, which Plaintiff characterizes as "a policy, practice and custom . . . of forceful home break-ins of private residences without warrants." (*Id.* at 5.) Plaintiff has directed the Court's attention to the City's response to interrogatories stating that TPD will "use the force reasonably necessary to gain entry into the home when the individuals inside do not

comply with officers [sic] instructions to open the door after officers have knocked and announced that they [sic] a verbal order issued by the court." (*See* Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. A, Doc. 56-1.) Plaintiff contends Muse violated Plaintiff's constitutional rights while acting pursuant to this policy because the court order was not valid and did not satisfy the requirements of a warrant under the Fourth Amendment. Granting all inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a claim under § 1983 for violation of his Fourth Amendment rights based on TPD's policy, practice, or custom of enforcing verbal court orders issued pursuant to § 1-4-201-A.2.

However, Plaintiff's other theories of municipal liability are not plausible. Plaintiff makes conclusory statements in his response brief that TPD failed to supervise Muse, failed to discipline him for allegedly violating Plaintiff's rights, and failed to discourage officers from committing perjury. However, Plaintiff offers no facts supporting these theories and has not shown that they are more than speculative. *See Littrell v. Davis County*, No. 1:05-CV-30, 2007 WL 583336, at *5 (D. Utah Feb. 22, 2007) (dismissing a plaintiff's § 1983 claim against county when complaint only made "conclusory" allegations regarding a county policy and "[did] not identify a policy or custom that would be a moving force behind the constitutional deprivation alleged in the [c]omplaint"). These conclusory statements fail to "inform [the City] of the actual grounds of the claim against [it]." *Robbins*, 529 F.3d at 1247.

### 2. § 1983 False Arrest Claims

To state a false arrest or imprisonment claim under the Fourth Amendment, a plaintiff must show "[f]irst, . . . that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States[, and] [s]econd, . . . that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"

*Smith v. Plati*, 258 F.3d 1167, 1175 (10th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). "Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Moeck v. City of Albuquerque*, 813 F.3d 912, 925 (10th Cir. 2015) (citation omitted).

Plaintiff was arrested for violating Okla. Stat. tit. 21 § 540, which makes it a misdemeanor to "willfully delay[] or obstruct[] any public officer in the discharge or attempt to discharge any duty of his office." Plaintiff contends there was no probable cause to arrest him for obstructing an officer because TPD was not authorized to enter his home.

The facts and circumstances, as alleged in Plaintiff's TAC and briefs, do not plausibly show the absence of probable cause for his arrest for obstruction. Even assuming Muse was not authorized to enter Plaintiff's home, Muse had probable cause to arrest Plaintiff for obstruction based on Plaintiff's own allegation that he caused a thirty-minute delay in Muse carrying out his duties. Plaintiff does not dispute that Muse was informed of a verbal pickup order, that Muse took J.D. from the home at gunpoint, and that Plaintiff resisted and delayed this action. This supports the inference that based on the facts and circumstances at the time of arrest, probable cause existed for the arrest.[7] Plaintiff has not stated a claim against Muse under § 1983 based on Plaintiff's arrest for obstructing an officer, and such claim is therefore dismissed.

---

[7] In his response brief, Plaintiff contends the obstruction charge against him was dismissed and the prosecutor in that action stated that there was no telephonic warrant to enter Plaintiff's home. However, even if assumed to be true, these facts alone do not make his arrest unlawful, because reasonableness is determined based on the facts and circumstances at the time of the arrest.

Plaintiff's claim against the City is also dismissed because if Plaintiff's arrest did not violate his constitutional rights, he cannot state a claim of municipal liability for the arrest. *See Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." (citations omitted)), overruled in part on other grounds, *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 n.2 (10th Cir. 2001).

### 3. § 1983 False Imprisonment Claims

A plaintiff who was "imprisoned without legal process . . . has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The tort of false imprisonment is the unlawful detention of a person against his will. *Walters v. J.C. Penney Co., Inc.*, 82 P.3d 578 (Okla. 2003). As discussed in Part I.E.2 above, Plaintiff has not alleged facts plausibly showing that he was unlawfully arrested or detained. Accordingly, Plaintiff's § 1983 false imprisonment claim against Muse is dismissed. Plaintiff's § 1983 false imprisonment claim against the City is also dismissed. *See Webber*, 43 F.3d at 1344-45.

### 4. § 1983 Malicious Prosecution Claims

A plaintiff who was "'imprisoned pursuant to legal but wrongful process[] . . . has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Mondragon*, 519 F.3d at 1082. "[A] § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Sanchez v. Hartley*, 810 F.3d

750, 754 n.1 (10th Cir. 2016) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). As set forth in Part I.E.2 above, Plaintiff has not plausibly alleged the absence of probable cause for his arrest; therefore, he cannot satisfy the third element of a malicious prosecution claim. Accordingly, Plaintiff's § 1983 claims against Muse and the City for malicious prosecution are dismissed. *See Webber*, 43 F.3d at 1344-45.

### 5. Qualified Immunity

Defendants contend Muse is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). In order to survive a motion to dismiss based on qualified immunity, a plaintiff must "allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins*, 519 F.3d at 1249. "This requires enough allegations to give the defendants notice of the theory under which their claim is made," but does not mean a plaintiff "must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (internal quotation omitted). At the 12(b)(6) stage, "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

With respect to Plaintiff's sole surviving claim against Muse, which is based on the unreasonable search and seizure, the Court finds Plaintiff has plausibly alleged that Muse violated his constitutional rights. Further, as alleged in the TAC, the right allegedly violated was clearly established at the time. *See McInerney v. King*, 791 F.3d 1224, 1231 (10th Cir. 2015) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are

presumptively unreasonable."). For the reasons set forth in Part I.E.1 above, Plaintiff has alleged facts sufficient to provide Muse notice of the theory under which this claim is made. Therefore, for purposes of Defendants' motion to dismiss, Muse is not entitled to qualified immunity as to this claim. However, Muse is entitled to qualified immunity on Plaintiff's other claims because the TAC fails to plausibly allege a § 1983 claim for constitutional violations arising from his arrest, as discussed in Parts I.E.2 through I.E.4 above.

### 6. Official Capacity

Muse also moves to dismiss claims asserted against him in his official capacity, arguing that such claims are actually claims against the City and are therefore redundant. "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998); *see also Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."). Because the City is already a Defendant in this lawsuit, the "official capacity" claims against Muse are redundant and may be dismissed. *See Moore v. Bd. of County Comm'rs of County of Leavenworth*, 470 F. Supp. 2d 1237, 1256 (D. Kan. 2007) (granting summary judgment in favor of sheriff and holding that "official capacity claims" against sheriff were "redundant because they [were] actually claims against the County itself," where the plaintiffs had separately sued the county).

## II. Defendants' Motion for Summary Judgment

Defendants also filed a motion for summary judgment pursuant to Rule 56. The Court's summary judgment analysis is limited to the non-dismissed claims: (1) Plaintiff's § 1983 claims

against Muse and the City based on violation of his Fourth Amendment rights based on unreasonable search and seizure.

## A. Rule 56 Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed.R.Civ.P. 56(e)). To meet this burden, the nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that

15

a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F. 2d 789, 793 (10th Cir. 1988).

"[U]nder the applicable procedural rules, it is the duty of the parties contesting a motion for summary judgment to direct the court to those places in the record where evidence exists to support their positions. Plaintiff's pro se status does not absolve him from compliance with the rules of procedure[.]" *Strope v. Pettis*, No. Civ.A. 05-3059-MLB, 2006 WL 482915, at *3 (D. Kan. Feb. 28, 2006) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.1994)).

### B.    Undisputed Facts

In addition to the allegations set forth in Part I.A above, Defendants' motion for summary judgment states the following facts which Plaintiff does not dispute:

- "On April 18, 2015, a Saturday, DHS had received a referral from Plaintiff's neighbor on DHS's abuse hotline that the child living at 3139 E. Virgin Street had made statements that her father had sexually abused her and was otherwise neglectful of the child." (Defs.' Mot. for Summ. J. 2.)

- "Burke . . . contacted [Felty] and [Judge Fransein] to obtain an emergency custody order for J.D." (*Id.*)[8]

- "Judge Fransein gave [Burke] authorization to execute an emergency custody order for J.D. pursuant to [§ 1-4-201-A2]." (*Id.*)[9]

---

[8] In his surreply, Plaintiff disputes this statement by challenging the validity of the verbal custody order. However, he does not dispute that Burke contacted Felty and Judge Fransein to obtain an emergency custody order for J.D.

[9] In his surreply, Plaintiff questions why the order was given to DHS instead of to the police. However, he does not dispute that Judge Fransein issued an emergency custody order pursuant to § 1-4-201-A2.

- "[Muse] confirmed the verbal authorization with Judge Fransein and [Felty]." (*Id.* at 3.)[10]

- "[After police forced entry to the house], DHS took emergency custody of J.D." (*Id.*)

- "On April 21, 2015, Judge Fransein held the Emergency Custody Hearing Order receiving stipulations and evidence." (*Id.*) Judge Fransein found: "(1) there was a reasonable suspicion that the child was in need of immediate protection due to abuse or neglect or the circumstances or surroundings of the child; (2) . . . the continuation of the child in the home was contrary to the health, safety or welfare of the child because of declaration and sworn statement of [Burke]; and (3) . . . efforts to prevent the removal of the child from the home were not made because of the emergency situation and to provide for safety and welfare of the child based on alleged sexual abuse, abuse and neglect of a six year old child." (*Id.* at 4.)[11]

### C.      Analysis

In their motion for summary judgment, Defendants cite and attach several court records and police documents, including: Judge Fransein's 4/20/15 Order (Doc. 53-1); application materials submitted in support of the request for the 4/20/15 Order, including the Burke Declaration (Docs. 53-2-3); Judge Fransein's 4/21/15 Order (Doc. 53-4); a TPD Incident Report (Doc. 64-5); a TPD

---

[10] In his surreply, Plaintiff contends the verbal order did not authorize Muse's later actions. However, he does not dispute that Muse confirmed the verbal authorization with Judge Fransein and Felty.

[11] Plaintiff contends Burke's statements were based on false allegations made by Plaintiff's neighbor.

Supplemental Offense Report (Doc. 64-7);[12] and a sworn affidavit of Felty, the assistant district attorney ("Felty Affidavit") (Doc. 64-8).

Defendants contend the forced entry into Plaintiff's home was authorized because Muse and the TPD were carrying out the verbal emergency custody order of Judge Fransein to take custody of J.D. pursuant to § 1-4-201-A.2. (Doc. 64-1.) Defendants rely on statements made in the court proceedings and police records, set forth in part below:

- From the Burke Declaration (Doc. 64-3): Plaintiff's neighbor made a report on April 18, 2015, alleging sexual abuse, other abuse, and neglect of J.D. A DHS worker went to Plaintiff's home that day. Plaintiff's house was barred by a locked gate, and a dog was in the front yard. Plaintiff opened the door and officers asked him to come to the gate and talk. Plaintiff stated that he needed to get something inside and shut the door. A woman, apparently Plaintiff's mother, then emerged from the garage and spoke to officers. Officers asked her to put the dog away, which she did. The woman then went back inside and would not come out of the house.

---

[12] Also before the Court is a TPD Arrest and Booking Data form ("Arrest and Booking Form") relating to Plaintiff's arrest on April 18, 2015. Plaintiff alleges that Muse committed perjury on the form by stating that officers had a "telephonic warrant" to enter Plaintiff's home and that officers informed Plaintiff they had a warrant and repeatedly ordered him to open the door before forcing entry. Defendants maintain that a different officer, D.H. Pyle, completed the Arrest and Booking Form. Plaintiff has filed several motions in which he contends the form was completed by Muse, even though the name "D.H. Pyle, TPD" is listed on the signature line. Plaintiff contends he has proof by means of handwriting samples that show the report was written by Muse. Plaintiff has also moved for sanctions against Muse based on alleged misrepresentation of the authorship of the Arrest and Booking Form. The Court does not have sufficient information before it to determine the authorship of the Arrest and Booking Form. In the interest of granting all inferences in Plaintiff's favor, the Court will not consider statements made in the Arrest and Booking Form for the purpose of Defendants' motion for summary judgment. The Court finds Plaintiff has not shown grounds for sanctions against Muse and therefore denies Plaintiff's motion for sanctions (Doc. 98).

Officers subsequently knocked on the door several times with no answer and observed Plaintiff through the window putting a child in the back of the house.

- From the TPD Incident Report (Doc. 64-5):[13]  Officers arrived at Plaintiff's house and observed a man with a small child near the front porch go into the house.  They spoke with a woman who emerged from the garage and told her they were there with DHS to perform a well-being check on a six-year-old child.  Officers asked the woman to secure loose dogs and have Plaintiff come out and speak with them.  Officers then approached the house and attempted to make contact with Plaintiff.  The reporting officer "knocked and announced numerous time[s]."  Through the drapes, he could see Plaintiff sitting on the floor in the hallway and remained seated there after several announcements telling him who was at the door and that he needed to come to the door.  The reporting officer advised Muse, who then arrived with additional officers.

Burke contacted Felty and Judge Fransein, who gave Burke authorization to execute an emergency pick-up order for J.D.  Muse confirmed the verbal authorization with Felty and Judge Fransein.  Muse and other officers approached the residence, and Muse made several announcements that the police were there and the occupants were to come outside.  After the occupants refused several commands, including a warning that continued refusal would result in forced entry, Muse forced entry into the house.  Officers arrested Plaintiff and a woman and transported J.D. to a hospital for examination.

---

[13]  Officer Christopher Bender is listed as the reporting officer.  The TPD Supplemental Offense Report dated April 19, 2015 also describes many of these facts.  (Doc. 64-7.)

•  From the Felty Affidavit (Doc. 64-8): On the night of April 18, 2015, Felty received via telephone a verbal application from Burke for a verbal order placing J.D. in the emergency custody of DHS.  DHS informed Felty that they had assessed J.D. to be unsafe and in need of immediate protection due to imminent safety threats, including but not limited to allegations of sexual abuse of the child by the father.  After being apprised of the facts of the situation, Felty approved the verbal application for emergency custody of J.D.  Judge Fransein subsequently entered an order placing J.D. in emergency custody of DHS.  Felty also spoke to Muse that night to confirm Judge Fransein's order.  The court records submitted with Defendants' motion are legitimate copies of the application, declaration, and order in the DHS proceeding involving J.D.

Plaintiff disputes many of the factual assertions made in the court and police records put forth by Defendants.  However, Plaintiff did not submit any exhibits or cite any evidence on the record in his response brief.  Instead, Plaintiff contends the statements in his unsworn response brief are based on his personal knowledge and are equivalent to an affidavit.  He also states that his mother is willing to sign affidavits and testify as to his version of events.  (Pl.'s Surreply, Doc. 78, at 3.)

Even if the Court were to consider Plaintiff's unsworn assertions as if they were made in a sworn affidavit, Plaintiff has not shown more than a "mere metaphysical possibility" that Muse's actions were not authorized by the verbal order of Judge Fransein  pursuant to § 1-4-201-A.2. *Schneider*, 493 F.3d at 1177.  Plaintiff relies primarily on his allegation that Muse stated, "What is the name of this girl that I am here to get?" upon entering Plaintiff's house.  Plaintiff contends that since Muse apparently did not know J.D.'s name, the court order must not have met the particularity

requirements of a warrant. However, this testimony alone is not sufficient to create a genuine dispute as to whether the verbal order was valid. There are many possible reasons Muse could have made such a statement. Furthermore, even if Muse did not know J.D.'s name, that fact alone would not create a reasonable basis to infer that the court order was invalid, given the substantial evidence put forth by Defendants that the order complied with Oklahoma law. Plaintiff also states that he was told by a juvenile court clerk that there was no written order and was unable to obtain a copy until this lawsuit. However, Plaintiff has not presented any evidence to call into question the authenticity of the 4/20/15 Order.

Many of Plaintiff's remaining statements consist of legal conclusions or clearly are not based on his personal knowledge. Conclusory statements that are not supported by evidence in the record are not sufficient to create a genuine dispute of fact. *Hall*, 935 F.2d at 1111; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

In support of his claim against the City, Plaintiff contends TPD's policy of enforcing verbal court orders pursuant to § 1-4-201-A.2 does not meet the constitutional requirements of a warrant. However, by its terms, § 1-4-201-A.2 provides that "upon being advised by the district attorney or the court of the verbal order, law enforcement shall act on such order." Moreover, courts have widely held that emergency custody orders are equivalent to a warrant. "'The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances.'" *Cleveland v. Sharp*, No. CIV-13-1281-F, 2016 WL 4708249 (W.D. Okla. July 28, 2016) (report and recommendation of magistrate) (adopted by *Cleveland v.*

*Sharp*, No. CIV-13-1281-F, 2016 WL 4705580 (W.D. Okla. Sept. 8, 2016)) (citing *Krantz v. City of Toledo Police Dept.*, 197 F. App'x 446, 454 (6th Cir. 2006) (citations omitted)).  "Because a child custody order is akin to a warrant, officers may enter a residence to execute the order upon reasonable belief the child is inside."  *See id.* (citing *Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999) ("In the context of a seizure of a child by the State during an abuse investigation . . . a court order is the equivalent of a warrant.")); *Wernecke v. Garcia*, 591 F.3d 386, 397 (5th Cir. 2009) (officers acting pursuant to a child custody order have limited authority to enter a residence to execute the order upon reasonable belief that the child is inside)).  Plaintiff has not offered any authority, other than quotation from the Fourth Amendment, to suggest that TPD's policy or practice of enforcing orders pursuant to § 1-4-201-A2 is unlawful.  Nor has Plaintiff indicated that officers did not have a reasonable belief that J.D. was in the house when they entered it.  Accordingly, Plaintiff's § 1983 claim asserting violation of his Fourth Amendment rights in connection with a warrantless search and seizure against the City fails as a matter of law.

Plaintiff has also failed to produce sufficient evidence of a knock-and-announce violation.  Plaintiff asserts that "TPD officers did not announce their presence or identify themselves as TPD officers," and "[t]here were no repeated requests to come to the door and speak with officers."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 2.)  For the purpose of this motion, the Court reads this statement as affidavit testimony that Plaintiff did not hear officers announce themselves.  However, many of Plaintiff's other assertions do not plausibly support the conclusion that officers failed to knock and announce.  For example, Plaintiff states that he heard "indiscriminate and mostly unintelligible yelling," (*id.* at 2), and that Muse yelled a command to open the door (TAC, ¶ 3).  Further, Plaintiff alleges that up to thirty minutes passed between officers' arrival and the forced entry.  The totality

of evidence in the record does not support a reasonable inference that officers failed to announce their presence before forcing entry.

The Court has examined Plaintiff's allegations throughout his pleadings in this case and finds that he has not met his burden to show evidence from which a rational trier of fact could find for him on his Fourth Amendment search and seizure claims. Under Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." While Plaintiff has suggested his mother would sign an affidavit and testify, the Court cannot find a reasonable likelihood that an affidavit or testimony from Plaintiff or his mother would create a dispute of material fact such that a jury could find for Plaintiff. Accordingly, Defendants are entitled to summary judgment on Plaintiff's remaining claims.

## III.    Conclusion

Defendants' Motion to Dismiss (Doc. 53) is GRANTED in part and DENIED in part, as set forth in Part I above.

Defendants' Motion for Summary Judgment (Doc. 64) is GRANTED as to all non-dismissed claims and moot as to dismissed claims.

Plaintiff's Motion for Summary Judgment (Doc. 61) is DENIED as moot in light of the Court's dismissal and/or entry of summary judgment of all of Plaintiff's claims.

Plaintiff's Motion for Sanctions (Doc. 98) is DENIED.

Plaintiff's Motion to Reconsider (Doc. 99); Plaintiff's Motion for Leave to Appear (Doc. 100); Defendants' Motion in Limine (Doc. 102); and Plaintiff's Motion to Transfer (Doc. 106) are DENIED as MOOT in light of the Court's ruling in this Order.

The Court will enter a Judgment of Dismissal and Judgment.[14]

**SO ORDERED this 1st day of December, 2017.**

_Terence Kern_

**TERENCE KERN**
**United States District Judge**

---

[14] The Court entered a Judgment of Dismissal (Doc. 108) and Judgment (Doc. 109) concurrently with its original Opinion and Order on October 23, 2017. No further judgment is entered in connection with this Amended Opinion and Order.